COPY

1   MARC M. SELTZER (54534)
    mseltzer@susmangodfrey.com
2   KATHRYN P. HOEK (219247)
    khoek@susmangodfrey.com
3   STEVEN G. SKLAVER (237612)
    ssklaver@susmangodfrey.com
4   AMANDA BONN (270891)
    abonn@susmangodfrey.com
5   SUSMAN GODFREY L.L.P.
    1901 Avenue of the Stars, Suite 950
6   Los Angeles, CA 90067
    Telephone: (310) 789-3100
7   Fax: (310) 789-3150

8   *Attorneys for Defendant Alta-Dena Certified Dairy, LLC*

FILED

BY:
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
2013 JUN 17 PM 2:01

11          UNITED STATES DISTRICT COURT

12          CENTRAL DISTRICT OF CALIFORNIA

14              WESTERN DIVISION

| | |
|---|---|
| JUAN PEREZ, on behalf of himself and those similarly situated, | Civil Action No. **CV13-04335-CAS (JCA)** |
| Plaintiffs, | **CLASS ACTION** |
| v. | **ALTA-DENA CERTIFIED DAIRY, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332(a), 1332(d)(2), 1441(a) (DIVERSITY AND CAFA)** |
| ALTA-DENA CERTIFIED DAIRY, LLC, a Delaware Limited Liability Company; and DOES 1 through 10, inclusive, | |
| Defendants. | [Los Angeles Superior Court Case No. BC509036] |

1    Pursuant to 28 U.S.C. §§ 1332(a), 1332(d)(2), 1441(a), and 1453(b),
2  Defendant Alta-Dena Certified Dairy, LLC ("Alta-Dena") hereby gives notice of
3  the removal of the above-entitled action from the Superior Court of the State of
4  California, County of Los Angeles, Case No. BC-509036, to the United States
5  District Court, Central District of California, Western Division.

6    For this Notice of Removal, Alta-Dena pleads as follows:

7    1.    There is jurisdiction over this removed action pursuant to 28 U.S.C. §
8  1441(a) because the matter in controversy exceeds $75,000, exclusive of interest
9  and costs, and is between citizens of different states, and therefore originally could
10 have been filed in this Court pursuant to 28 U.S.C. § 1332(a).  In addition, there is
11 jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), because
12 this is a class action in which the amount in controversy exceeds $5,000,000 and at
13 least one member of the class is a citizen of a State different from any defendant.
14 28 U.S.C. §§ 1332(d)(2), 1453(b).

15   2.    On May 15, 2013, Juan Perez ("Plaintiff") commenced this action in
16 the Superior Court of the State of California for the County of Los Angeles, entitled
17 *Juan Perez v. Alta Dena Certified Dairy, LLC*, as Case Number BC509036.  A true
18 and correct copy of the original complaint, summons, and civil cover sheet is
19 submitted herewith as Exhibit 1 to the Declaration of Kathryn Hoek ("Hoek
20 Decl.").

21   3.    Because this action was filed and is pending in the Superior Court of
22 the State of California for the County of Los Angeles, removal of this action to this
23 District Court is proper under 28 U.S.C. § 1446(a).

24   4.    This Notice of Removal is timely because it is being filed within thirty
25 days of Plaintiff's service of his Complaint on Alta-Dena Certified Dairy, LLC on
26 May 17, 2013.  28 U.S.C. § 1446(b).

27   5.    The summons, civil case cover sheet, complaint, proof of service of
28 summons, and Initial Status Conference Order constitute all process, pleadings and

1    orders that have been filed in this action. True and correct copies of these

2    documents, along with a copy of the docket, are submitted herewith as Exhibits 1-2

3    to the Hoek Declaration.

4       6.    Written notice of the filing of this Notice of Removal will be promptly

5    served upon Plaintiff. A true and correct copy of this Notice of Removal is being

6    filed with the Clerk of the Superior Court of California for the County of Los

7    Angeles as soon as practicable.

8    **I.    SUMMARY OF COMPLAINT**

9       7.    Plaintiff Juan Perez alleges that he was employed by Alta-Dena as a

10   truck driver since 2005. (Compl. ¶ 7) Plaintiff alleges that Alta-Dena "failed to

11   authorize and/or permit Mr. Perez (and other similarly situated drivers) with legally

12   compliant meal and/or rest breaks, which further resulted in other California Labor

13   Code violations[.]" (*Id.*)

14      8.    In addition to his individual claims, Plaintiff brings claims on behalf of

15   a putative class of "[a]ll persons who were employed by Defendant as a 'Driver' for

16   as long as the statutory period will allow (the 'putative class')." (*Id.* ¶ 8)

17      9.    Plaintiff alleges that "Defendant had a uniform policy and practice of

18   restricting all drivers' [sic] during their alleged meal periods to remain within a

19   one-mile (or half-mile) radius of their designated routes. Thus, Defendant did not

20   allow Plaintiff or any putative class member duty free meal period(s) as required by

21   the California Labor Code and the applicable Industrial Welfare Commission Wage

22   Orders." (*Id.* ¶ 14) Plaintiff also alleges that Defendant's meal and rest break

23   policy failed "to comply with meal and rest break timing requirements." (*Id.*)

24   Plaintiff alleges that "Defendant had a corporate policy and/or practice that did not

25   permit 'drivers' (such as Plaintiff) from taking a meal and/or rest break until a

26   shipment was completed (*i.e.,* driven from Defendant's place of business to another

27   local California delivery destination)," and that "Defendant would neither authorize

28   nor permit a meal and/or rest break in between routes because that would delay

1   delivery." (*Id.*)  Plaintiff alleges that, as a result, "from at least 2005, Plaintiff and

2   the putative class members were not authorized or permitted to take a meal and/or

3   rest break, and – in turn – received less than what was due to them on the next pay

4   check (and/or at the termination of employment)." (*Id.*)  Plaintiff alleges that he "is

5   informed and believes these policies and/or practices continued from at least 2005

6   to December 31, 2010, . . . [and] applied to all of Defendant's drivers in Southern

7   California." (*Id.*)  Plaintiff further alleges that "beginning in at least 2005 to at least

8   December 31, 2010, Defendant instituted a practice of automatically deducting 30

9   minutes of work time and, thus, 30 minutes of pay each day from each driver

10   regardless of whether or not the driver actually took a duty free meal period if the

11   driver worked beyond his minimum shift of eight or ten hours." (*Id.* ¶ 15)

12         10.   Plaintiff brings claims on behalf of himself and the putative class for

13   (1) failure to provide rest periods and meal periods, in violation of Cal. Labor Code

14   §§ 226.7 and 512; (2) failure to pay statutory minimum wage, straight time, and

15   overtime and "off-the-clock work", in violation of Cal. Labor Code §§ 510, 511,

16   1182.12, and 1194, and the applicable IWC Order; (3) failure to pay all wages

17   earned, in violation of Cal. Labor Code §§ 201-04; (4) "clawing back" earned

18   wages or making unauthorized deductions from employees' compensation, in

19   violation of Cal. Labor Code §§ 221-224; (5) failure to provide accurate itemized

20   wage statements, in violation of Cal. Labor Code § 226; and (6) unfair business

21   practices, in violation of Cal. Bus. & Prof. Code §§ 17200, et seq. (*Id.* ¶¶ 20-52)

22         11.   In addition, Plaintiff brings wage and hour claims on behalf of himself

23   and the putative class under the Labor Code Private Attorneys General Act of 2004

24   ("PAGA"), Cal. Labor Code §§ 2698-2699, seeking to recover various civil

25   penalties. (Compl. ¶¶ 22, 27, 32-34, and 43)

26         12.   Plaintiff prays for relief in the form of general damages, compensatory

27   damages, special damages, punitive damages, statutory and civil penalties, pre- and

28

1  post-judgment interest, attorneys' fees and costs of suit, and equitable relief.
2  (Compl. Prayer For Relief ¶¶ 1-9)

3  **II.    DIVERSITY OF CITIZENSHIP**

4       **A.    Complete Diversity of Citizenship for § 1332(a) Jurisdiction.**

5       13.    In order to show that removal is proper under 28 U.S.C. § 1332(a), the
6  diversity jurisdiction statute, Alta-Dena must establish complete diversity of
7  citizenship. *See, e.g.*, *Snell v. Cleveland, Inc.*, 316 F.3d 822, 824 (9th Cir. 2002).

8            **1.    Plaintiff's Citizenship**

9       14.    Plaintiff alleges that "[a]t all times mentioned herein, and at the time
10  the causes of action arose, Mr. Perez was an individual and citizen of the County of
11  Los Angeles, State of California . . . ." (Compl. ¶ 2) (emphasis added) Thus, for
12  jurisdictional purposes, Plaintiff is a citizen of California. *Cf. Mantin v. Broadcast*
13  *Music, Inc.*, 244 F.2d 204, 206 (9th Cir. 1957) (noting that allegations of citizenship
14  satisfy the requirements of diversity jurisdiction).

15           **2.    Alta-Dena Certified Dairy, LLC's Citizenship**

16       15.    Alta-Dena Certified Dairy, LLC is a limited liability company
17  ("LLC") organized under the laws of Delaware.  (Compl. ¶ 1)  For purposes of
18  diversity jurisdiction, "an LLC is a citizen of every state of which its
19  owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437
20  F.3d 894, 899 (9th Cir. 2006).

21       16.    Alta-Dena Certified Dairy, LLC has one member, Dean West II, LLC,
22  which is also a limited liability company.  (Declaration of Marjorie Ball ("Ball
23  Decl.") ¶ 2)

24       17.    Dean West II, LLC has one member, Dean Dairy Holdings, LLC, also
25  a limited liability company.  (*Id.* ¶ 3)

26       18.    Dean Dairy Holdings, LLC's sole member is Dean Holding Company,
27  a corporation organized under the laws of the State of Wisconsin, with its corporate

28

1   headquarters located at 2711 North Haskell Avenue, Suite 3400, Dallas, Texas
2   75204. (*Id.* ¶¶ 4-6)

3       19.   Dean Holding Company is owned entirely by Dean Foods Company, a
4   corporation whose principal place of business is also located in Dallas, Texas.  The
5   large majority of Dean Holding Company's officers reside and work in the Dallas,
6   Texas area and, when decisions are made about the business of Dean Holding
7   Company, they are made by those officers in Dallas, Texas.  (*Id.* ¶ 6)

8       20.   Dean Holding Company is thus a citizen of Wisconsin and Texas for
9   purposes of diversity jurisdiction.   *Johnson*, 437 F.3d at 899 (noting that "a
10   corporation is a citizen only of (1) the state where its principal place of business is
11   located, and (2) the state in which it is incorporated"); *see also Hertz Corp. v.*
12   *Friend*, 130 S. Ct. 1181 (2010) (holding that "'principal place of business' is best
13   read as referring to the place where a corporation's officers direct, control, and
14   coordinate a corporation's activities," in other words, "the place that Courts of
15   Appeals have called the corporation's 'nerve center'" or "the place where the
16   corporation maintains its headquarters").

17       21.   As a result, Alta-Dena Certified Dairy, LLC is a citizen of Wisconsin
18   and Texas for diversity jurisdiction purposes. *Johnson*, 437 F.3d at 899.

19       22.   Because Plaintiff is a citizen of California, while Alta-Dena Certified
20   Dairy, LLC is a citizen of Wisconsin and Texas, Plaintiff and Alta-Dena are diverse
21   for purposes of diversity jurisdiction.  28 U.S.C. § 1332(a)(1).

22       **B.**   **Minimal Diversity of Citizenship for § 1332(d)(2) Jurisdiction.**

23       23.   Although, as explained above, the parties to this litigation are
24   *completely* diverse in citizenship, in order to establish jurisdiction under CAFA,
25   Alta-Dena need only show that the parties are minimally diverse. *See Coleman v.*
26   *Estes Exp. Lines, Inc.*, 631 F.3d 1010, 1012 (9th Cir. 2011).  In other words, "one
27   plaintiff's diversity from one defendant suffices" to establish diversity for CAFA

28

1   purposes.  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 595 n.12
2   (2005).

3       24.   As discussed above, Plaintiff, a citizen of California, is unquestionably
4   diverse from Alta-Dena Certified Dairy, LLC, a citizen of Wisconsin and Texas.
5   As such, the minimal diversity requirement is satisfied.

6   **III.   AMOUNT IN CONTROVERSY**

7       25.   The amount-in-controversy requirement is satisfied for purposes of
8   diversity jurisdiction as well as CAFA jurisdiction.   28 U.S.C. §§ 1332(a),
9   1332(d)(2).   "[W]here a plaintiff's state court complaint does not specify a
10  particular amount of damages, the removing defendant bears the burden of
11  establishing, by a preponderance of the evidence, that the amount in controversy
12  exceeds [the jurisdictional minimum]." *Sanchez v. Monumental Life Ins. Co.*, 102
13  F.3d 398, 404 (9th Cir. 1996).   "Under this burden, the defendant must provide
14  evidence establishing that it is 'more likely than not' that the amount in controversy
15  exceeds that amount." *Id.*   "To establish the jurisdictional amount, [a defendant]
16  need not concede liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 394, 400
17  (9th Cir. 2010); *Coleman*, 730 F. Supp. 2d at 1148 (holding defendant "is not
18  obligated to research, state, and prove the plaintiff's claim for damages" to establish
19  jurisdiction).[1]   "[C]ourts have assumed a 100% violation rate in calculating the
20  amount in controversy when the complaint does not allege a more precise
21  calculation." *Coleman*, 730 F. Supp. 2d at 1148.

22      26.   The minimum amount required for individual claims is $75,000, and
23  the minimum amount required for class actions under CAFA is $5 million.   28
24  U.S.C. §§ 1332(a), 1332(d)(2).

25

26  [1] In *Coleman*, for example, the court held that the defendant met its burden by a
27  preponderance of the evidence with a declaration stating the number of employees
    and calculating damages based on a 100% assumed violation rate supported by the
28  Complaint's allegations.  730 F. Supp. 2d at 1149.

A.   **$75,000 Amount-In-Controversy For Diversity Jurisdiction**
1.   **Plaintiff's Individual Wage and Hour Claims**

27.   In Paragraph 14 of his Complaint, Plaintiff alleges that from "at least 2005 to December 31, 2010":

- Alta-Dena had a "uniform policy and practice" that "*did not allow* Plaintiff or any putative class member *duty free* meal period(s)."

- Alta-Dena's meal and rest break policy failed "to comply with meal and rest break timing requirements," and, as a result, "Plaintiff and other drivers *often* went six (6) hours if not longer without a meal and/or rest break."

- Alta-Dena did not "inform Plaintiff or the putative class member that there [*sic.*] were entitled to a second meal break if they worked over 10 and/or 12 hours in a day (which Plaintiff *often* did)."

28.   Before filing his complaint in this case, Plaintiff submitted a declaration in another case against Alta-Dena (and other defendants). That action, *de la Cueva v. Alta-Dena Certified Dairy LLC*, No. CV 12-1804-GHK ("the *de la Cueva* action"), was brought by Miguel de la Cueva and sought to assert claims against Alta-Dena that were similar to the claims Plaintiff asserts here. Plaintiff filed his declaration in support of Mr. de la Cueva's motion for class certification, which the court denied.   In his declaration, Plaintiff made the following statements under oath regarding his employment by Alta-Dena:[2]

- "I *generally* worked a 5-8 schedule, meaning I worked five days a week, and was scheduled for at least eight hours a day." (Hoek Decl., Ex. 3 ¶ 2)

- *Usually* I worked at least 10 hours a day and *often* more. . . . [T]he amount of time managers gave me to complete my route left hardly

---

[2]  A true and correct copy of Plaintiff's declaration in the *de la Cueva* action is attached as Exhibit 3 to Hoek Declaration, filed herewith.

1    any room - if at all- to take a 30-minute duty free meal break and two

2    15-minute rest breaks." (*Id.*)

3   • "I *often* was unable to take a 30-minute duty free meal break, or two

4    15-minute rest breaks. And the times I was able to take a meal break,

5    it was well after the 6th hour of my shift (and *almost always* after all

6    my deliveries were completed - at least eight or nine hours into my 8

7    shift)." (*Id.* ¶ 3)

8   • "[T]he way my route was assigned to me, it was *almost impossible*

9    take a 30-minute meal break (and *definitely not* a 15 minute rest break

10    as well) before the 6th hour without being late." (*Id.* ¶ 4)

11        a.    Meal and Rest Break Premiums

12        29.    California Labor Code § 227.6 provides that "[i]f an employer fails to

13   provide an employee a meal period or rest period in accordance with an applicable

14   order of the Industrial Welfare Commission, the employer shall pay the employee

15   one additional hour of pay at the employee's regular rate of compensation for each

16   work day that the meal or rest period is not provided."  Cal. Labor Code § 227.6.

17   Industrial Welfare Commission ("IWC") Order No. 9, in turn, provides "[n]o

18   employer shall employ any person for a work period of more than five (5) hours

19   without a meal period of not less than 30 minutes, except that when a work period

20   of not more than six (6) hours will complete the day's work the meal period may be

21   waived by mutual consent of the employer and the employee."  IWC Order No. 9 ¶

22   11(a), codified at 8 Cal. Code Regs. § 11090.

23        30.    The statute of limitations for missed meal and rest break premiums is

24   three years. *See Murphy v. Kenneth Cole Prods., Inc.*, 56 Cal. Rptr. 3d 880, 883

25   (2007) ("[L]abor code section 226.7 constitutes a wage or premium pay and is

26   governed by a three-year statute of limitations . . . .")

27        31.    Assuming that the statute of limitations governing Plaintiff's claims

28   was tolled by the filing of the *de la Cueva* action on February 1, 2012, the three-

2722407v1/013775                              8

year statutory period for his meal and rest break premium claims would run from February 1, 2009 to February 1, 2012.[3]   However, Plaintiff makes no allegations against Alta Dena after December 31, 2010.   Thus, the statutory period on Plaintiff's meal and rest break premium claims under Section 226.7 would run from February 1, 2009 to December 31, 2010, or a total of 95 work weeks (45 work weeks in 2009 and 50 work weeks in 2010).

32.   Plaintiff also asserts a claim under California's Unfair Competition law ("UCL"), Bus. & Prof. Code, § 17200 *et seq.*, and apparently intends to use that claim to try to extend the statute of limitations on his meal and rest break premium claims to 4 years.[4]   In that case, the statutory period on Plaintiff's premium claims would run from February 1, 2008 to December 31, 2010, or a total of 145 work weeks (45 work weeks in 2008 and 50 work weeks in each of 2009 and 2010).

33.   Plaintiff's "regular rate of compensation" averaged approximately $24.77 per hour between February 2009 and December 2010, and approximately $25.14 per hour between February 2008 and December 2010.   (Ball Decl. ¶ 9)

34.   Plaintiff alleges that as a result of Defendant's policy of restricting drivers during their meal periods, he *never* was provided a duty-free meal period. (Compl. ¶ 14)   Plaintiff asserts that he "*generally*" worked 5 days a week for at least 8 hours a day and that he "*often*" worked 10 or more hours.   (*Id.*; Hoek Decl. Ex. 3 ¶ 2)   Plaintiff alleges that he was not permitted "a second duty-free meal period after 10 and/or 12 hours of work, if at all." (Compl. ¶ 21)

35.   With respect to rest breaks, Plaintiff alleges that he "*often*" worked 6 or more hours without a rest break.   (Compl. ¶ 14)   He alleges that "Defendant . . . did not authorize or permit its drivers two rest periods during a work-day," that he

---

[3]   Alta-Dena does not concede that Plaintiff's claims were tolled, and reserves its rights to challenge on the merits any arguments that Plaintiff's claims were tolled.
[4]   Alta-Dena does not concede that the UCL may be used to extend the statute of limitations on Plaintiff's claims, and reserves its right to challenge on the merits any arguments that the statutory period for Plaintiff's claims is extended.

"*often*" did not get a rest break, and that he "*generally*" worked at least 8 hours. (Compl. ¶ 14; Hoek Decl. Ex. 3 ¶ 2)

36.     Plaintiff's allegations and testimony support using a 100 percent violation rate for determining the amount in controversy on his meal period and rest break premium claims. *See, e.g., Coleman,* 730 F. Supp. 2d at 1149 (holding that defendant met its burden by a preponderance of the evidence with a declaration stating the number of employees and calculating damages based on a 100% assumed violation rate supported by the complaint's allegations); *Schuler v. Morton's of Chicago, Inc.,* No. CV 10-06762-ODW, 2011 WL 280993, at *5 (C.D. Cal. Jan. 25, 2011) (finding diversity jurisdiction satisfied under legal certainty standard based on assumed 100% violation rates for meal and rest break claims); *Stevenson v. Dollar Tree Stores, Inc.,* No. CV 11-1433-KJM, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (approving calculation based on a "more often than not" frequency of missed meal breaks given "plaintiff's allegations that members of the class were 'routinely' denied meal periods or not compensated for missed meal periods, combined with his allegations regarding the defendant's 'policy and practice'").[5]

37.     Nonetheless, for purposes of this notice of removal, Alta-Dena assumes only 3 meal period and 3 rest break violations per week, recognizing that this far underestimates the actual amount in controversy.

38.     Calculating premium pay accordingly, the amount in controversy on Plaintiff's claim for meal and rest break premium pay claim is at least $14,329.80 to $21,549.90, as reflected below:

---

[5] *See also Butterworth v. Am. Eagle Outfitters, Inc.,* No. CV 11-1203-LJO, 2011 U.S. Dist. LEXIS 132816, at *19 (E.D. Cal. Nov. 17, 2011) (holding that "the magistrate judge properly rejected Mr. Butterworth's objections to American Eagle's use of the 100% violation rate" and finding minimum amount in controversy satisfied under a preponderance standard); *Muniz v. Pilot Travel Ctrs. LLC,* No. CV 07-0325-FCD, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (finding amount in controversy satisfied based on assumed 100% violation rate and without the need for submission of "extensive business records").

Premium Pay applying 3-year limitation period of Section 227.6

Meal Periods:  $25.14 x 3 violations/week x 95 work weeks = $7,164.90

Rest Breaks:  $25.14 x 3 violations/week x 95 work weeks = $7,164.90

    *Total:* = $14,329.80

Premium Pay applying 4-year limitation period of UCL

Meal Periods:  $24.77 x 3 violations/week x 145 work weeks = $10,774.95

Rest Breaks:  $24.77 x 3 violations/week x 145 work weeks = $10,774.95

    *Total:* = $21,549.90

b.    "Clawed Back" Wages

39.    Plaintiff claims that "beginning in at least 2005 to at least December 31, 2010, Defendant instituted a practice of automatically deducting 30 minutes of work time and, thus, 30 minutes of pay each day from each driver regardless of whether or not the driver actually took a 30 minute duty free meal period[.]" (Compl. ¶ 15)  Plaintiff asserts that "[b]y automatically deducting 30 minutes from drivers pay regardless of whether they worked during that time or not, Defendant failed to pay Plaintiff and the putative class members at least the current minimum wage for those hours worked and also failed to pay for 30 minutes of overtime compensation that was due.  Indeed, Defendant failed to pay for this time at all." (*Id.* ¶ 23)  Plaintiff seeks the return of the withheld wages, as well as civil penalties under California Labor Code § 225.5.  (*Id.* ¶ 26)

40.    As with the meal and rest break premium claims, the statutory time period for this claim is three years, although Plaintiff apparently seeks to extend that time period by asserting a UCL claim.  Once again, assuming that Plaintiff's claims were tolled by the February 1, 2012 filing date in the *de la Cueva* action, and taking into account the fact that he alleges no claims against Alta-Dena after December 2010, the statutory period for Plaintiff's "clawed back" wages claim would run from February 2009 to December 2010 (95 work weeks) using a 3-year

statute of limitations, and from February 2008 to December 2010 (145 work weeks) using a 4-year statute of limitations.

41.    Based on Plaintiff's allegations and testimony, the amount in controversy on this claim may be calculated assuming a 100 percent violation rate. Nonetheless, Alta-Dena conservatively calculates the amount in controversy on the "clawed back" wages claim using only 3 instances per week in which 30 minutes were deducted from Plaintiff's pay despite Plaintiff not receiving a duty-free meal period. Thus, the amount in controversy on this claim is at least $3,582.45 to $5,387.48, as reflected below:

"Clawed Back" Wages applying 3-year limitation period

$25.14 x .50 x 3 violations/week x 95 work weeks = $3,582.45

"Clawed Back" Wages applying 4-year limitation period

$24.77 x .50 x 3 violations/week x 145 work weeks = $5,387.48

42.    This calculation does not even take into account Plaintiff's claim for overtime wages, which would substantially increase the amount in controversy.

c.    Inaccurate Wage Statements

43.    Plaintiff also claims that, based on the alleged missed meal periods and rest breaks and unauthorized deductions, Alta-Dena knowingly and intentionally failed to provide Plaintiff with accurate itemized wage statements in violation of California Labor Code § 226. (Compl. ¶¶ 40-44)

44.    Plaintiff claims that he is entitled to civil penalties under (1) California Labor Code § 226(e), which provides for a $50 penalty for the first pay period in which a violation occurs and $100 for each subsequent pay period, not to exceed $4,000; and (2) California Labor Code § 226.3, which he claims provides a civil penalty of $250 per employee per initial violation and $1,000 per employee per subsequent violation. (Compl. ¶¶ 42-43)

45.    The statute of limitations for penalty claims is one year.  Cal. Code Civ. P. § 340.  Plaintiff does not allege any conduct by Alta Dena after December 2010, thus it is Defendant's position that his penalty claims are time-barred.  However, because potential defenses do not affect the amount in controversy, these penalty claims must be considered in determining the amount in controversy.  *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 US 283, 295-296 (1938) (holding that potential defenses are not considered in determining amount in controversy); *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F3d 1102, 1108 (9th Cir. 2010) (holding that contractual limitation on liability did not affect amount in controversy); *Riggins v. Riggins*, 415 F.2d 1259, 1261-1262 (9th Cir. 1969) (holding that statute of limitations defense might bar portion of relief sought did not affect amount in controversy); *Scherer v. Equitable Life Assur. Society of U.S.*, 347 F3d 394, 398 (2d Cir. 2003) (holding that collateral estoppel doctrine might bar portion of relief sought did not reduce amount in controversy); William W. Schwarzer, A. Wallace Tashima, and James M. Wagstaffe, *Rutter Group Practice Guide: Federal Civil Procedure Before Trial, Calif. & 9th Cir. Editions*, Ch. 2C-8 § 2:1797 (2013) ("Potential defenses to all or part of the claim do not affect the amount in controversy—even if disclosed on the face of the complaint (e.g., potential statute of limitations defense). Reason: Defendant may not raise the defense; even if raised, the defense may be shown to be invalid.").

46.    Accepting for purposes of removal Plaintiff's allegation that he never received duty free meal periods and "often" did not receive rest breaks, the amount in controversy for Plaintiff's penalty claims is at least $27,800, as reflected below:

Section 226(e) Penalties

$50 for the first pay period, plus $100 each for the subsequent 25 pay periods during the one-year statutory period = $2,550

Section 226.3 Penalties

250 for the first pay period, plus $1,000 each for the subsequent 25 pay periods during the one-year statutory period = $25,250

    *Total:* = $27,800

47.    Therefore, Plaintiff's individual wage and hour claims involve an alleged total amount in controversy of at least $45,712.25 to $54,737.38, as reflected below:

Meal & Rest Break Premium Pay:  $14,329.80 (3 yrs) to $21,549.90 (4 yrs)

"Clawed Back" Wages:  $3,582.45 (3 yrs) to $5,387.48 (4 yrs)

Inaccurate Wage Statement Penalties:  $27,800

    *Total:* = $45,712.25 (3 yrs) to $54,737.38 (4 yrs)

## 2.    PAGA Wage and Hour Claims.

48.    In addition to his individual claims, Plaintiff purports to bring wage and hour claims under the Labor Code Private Attorneys General Act of 2004 ("PAGA"), Cal. Labor Code §§ 2698-2699. (Compl. ¶¶ 22, 27, 32, and 43)

49.    "Under PAGA, a plaintiff brings a representative action as an 'aggrieved employee,' on behalf of himself and other current or former employees, and seeks civil penalties for Labor Code violations by employers, with 75 percent going to the LWDA [California's Labor and Workforce Development Agency] and the remaining 25 percent to the aggrieved employees." *Id.* (citing Cal. Labor Code § 2699(a), (i)). *Urbino v. Orkin Servs. of Cal., Inc.*, 882 F. Supp. 2d 1152, 1158 (C.D. Cal. 2011). A plaintiff asserting a PAGA claim is thus "essentially bringing a law enforcement action designed to protect the public and not to benefit private parties." *Arias v. Super. Ct.*, 95 Cal. Rptr. 3d 588, 600 (2009) (internal quotation marks and citation omitted).

50.    When several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, "it is enough if their interests collectively equal the jurisdictional amount." *Troy Bank of Troy, Ind. v. G.A.*

*Whitehead & Co.*, 222 U.S. 39, 40 (1911).  The Ninth Circuit has held that where the claims of a group of plaintiffs "derive[] from rights that [the plaintiffs] hold in group status, then the claims are common and undivided.  If not, the claims are separate and distinct." *Eagle v. Am. Tel. & Tel. Co.*, 769 F.2d 541, 546 (9th Cir. 1985).

51.    In *Urbino*, a Central District of California court held "that the amount in controversy in a PAGA claim is predicated on the total amount of civil penalties sought by the aggrieved employees." 882 F. Supp. 2d at 1164.  The court explained that the amount in controversy should include aggregated PAGA claims because:

> while an aggrieved employee may separately litigate a PAGA claim if the LWDA declines to do so, a PAGA action is essentially a representative action brought by a group of aggrieved employees on behalf of the State. *The primary beneficiary is the public at large, not the private individuals involved.*  As noted in *Arias v. Superior Court*, 'any direct financial benefit to those harmed by the employer's unlawful conduct is ancillary to the primary object' of a PAGA claim—namely, to further the reach of the LWDA and protect the public's interest.  Furthermore, the PAGA statute *does not enable a single aggrieved employee to litigate his or her own claims*, but requires an aggrieved employee 'on behalf of herself or himself *and* other current or former employees' to enforce violations of the Labor Code by their employers.  The statute also *awards civil penalties to the aggrieved employees as a whole*.  The statute therefore contemplates a common group action with civil penalties being awarded to the entire group.

*Id.* at 1161 (internal citations omitted) (emphasis added).

52.    The court's decision in *Urbino* echoed another recent decision by the Eastern District of California holding that the amount in controversy on a PAGA claim should be aggregated for purposes of diversity jurisdiction.  *See Thomas v. Aetna Health of Cal., Inc.*, No. 10-cv-01906-AWI-SKO, 2011 WL 2173715, at *19 (E.D. Cal. June 2, 2011) ("In sum, a PAGA claim is common and undivided because the right to pursue the action derives solely from the LWDA's interest in enforcement of the Labor Code.  Aggrieved employees have no right to seek any

1   individual recovery under PAGA and are precluded from bringing repeated PAGA

2   suits. As a result, aggrieved employees have no separate and individual rights to

3   pursue under PAGA that would transform it from a law enforcement action that

4   furthers the interests of the LWDA into a myriad of separate and distinct claims of

5   the aggrieved employees.").

6         53.   Plaintiff's PAGA claims, therefore, derive from a "common and

7   undivided interest," and must be aggregated in order to determine whether the

8   amount-in-controversy exceeds $75,000.

9         54.   Plaintiff's Complaint claims "at least 99" aggrieved employees on

10  whose behalf he brings his PAGA claims. (Compl. ¶ 10)  In fact, Alta-Dena

11  continuously employed approximately 105 drivers during the applicable period.

12  (Ball Decl. ¶¶ 11-12)  Plaintiff seeks to recover at least three different statutory

13  penalties pursuant to PAGA on behalf of these allegedly aggrieved employees.[6]

14  The statute of limitations for these claims is one year. Thus it is Defendant's

15  position that the claims are time-barred, but since Plaintiff has put the claims at

16  issue by alleging them in his Complaint, they must be considered for purposes of

17  establishing the amount in controversy.

18        55.   *First*, Plaintiff seeks recovery of penalties that the LWDA could

19  collect pursuant to Labor Code § 210(a). (Compl. ¶ 32)  Labor Code § 210(a),

20  provides that "[i]n addition to, and entirely independent and apart from, any other

21  penalty provided in this article, every person who fails to pay the wages of each

22  employee as provided in Section[] . . . 204 . . . shall be subject to a civil penalty"

23  amounting to (1) "one hundred dollars ($100) for each failure to pay each

24  employee," and (2) "[f]or each subsequent violation, or any willful or intentional

25

26  [6] PAGA provides that "[n]otwithstanding any other provision of law, any provision
     of this code that provides for a civil penalty to be assessed and collected by the
27  [LWDA] . . . may, as an alternative, be recovered through a civil action brought by
     any aggrieved employee on behalf of himself or herself and other current or former
28  employees . . . ." Cal. Labor Code § 2699(a).

violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld." Cal. Labor Code § 210(a)(1)-(a)(2). Section 204, in turn, provides that "[a]ll wages . . . earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays." Cal. Labor Code § 204(a).

56.     Plaintiff alleges that "[b]y failing to pay premium pay for meal and/or rest breaks that were not provided, Defendant failed to pay all wages earned within 10 or 11 days following the semi-monthly pay period in which work was performed" and thus "willfully has violated California Labor Code § 204." (Compl. ¶ 30) Plaintiff alleges that he and other members of the class were never provided a duty free meal period and "often" were not provided any meal period at all as a result of Alta-Dena's policies and practices.

57.     *Second*, Plaintiff seeks recovery of penalties that the LWDA could collect pursuant to Labor Code § 226.3 (Compl. ¶ 43), which provides that "[a]n employer who violates subdivision (a) of Section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to keep the records required in subdivision (a) of Section 226." Cal. Labor Code § 226.3. Such penalties "are in addition to any other penalty provided by law." *Id.* Subdivision (a) of Section 226, in turn, requires that employers provide accurate itemized wage statements. Cal. Labor Code § 226(a).

58.     *Third*, Plaintiff seeks to recover statutory penalties under PAGA's separate penalty provision, Cal. Labor Code § 2699(f), for alleged violations of California's meal break laws. (Compl. ¶ 22) Labor Code § 2699(f) states that "[f]or all provisions of this code except those for which a civil penalty is

1   specifically provided, there is established a civil penalty for a violation of these

2   provisions," amounting to "one hundred dollars ($100) for each aggrieved

3   employee per pay period for the initial violation and two hundred dollars ($200) for

4   each aggrieved employee per pay period for each subsequent violation." A plaintiff

5   alleging a PAGA claim for missed meal periods in violation of Labor Code § 226.7

6   may thus collect penalties pursuant to Labor Code § 2699(f). *Murphy v. Kenneth*

7   *Cole Prods., Inc.*, 40 Cal.4th 1094, 1111 (2007) (holding "the Court of Appeal

8   erred in construing section 226.7 as a penalty" because "the 'additional hour of pay'

9   [language] is a premium wage intended to compensate employees, not a penalty").

10          59.   Calculating these statutory penalties based on each of the 105 alleged

11   putative class members having at least one missed meal period per pay period, the

12   amount in controversy on these claims is at least $3,722,250, as reflected below:

13   Section 210(a) PAGA Penalties

14   ($100 for the first violation + $200 each for 25 subsequent violations) x 105 drivers

15   = $535,500

16   Section 226.3 PAGA Penalties

17   ($250 for the first violation + $1,000 each for the 25 subsequent violations) x 105

18   drivers = $2,651,250

19   Section 2699(f) PAGA Penalties

20   ($100 for the first violation + $200 each for 25 subsequent violations) x 105 drivers

21   = $535,500

22          *Total:* $3,722,250

23                    **3.    Attorneys' Fees.**

24          60.   Plaintiff seeks an award of attorneys' fees for his wage-and-hour

25   claims.   Such statutory attorneys' fees are properly included in the amount-in-

26   controversy for jurisdictional purposes. *Galt G/S v. JSS Scandinavia*, 142 F.3d

27   1150, 1155-56 (9th Cir. 1998)). In *Simmons v. PCR Tech.*, the Court held that

28

1    "[w]hile attorneys' fees alone would not necessarily exceed $75,000, when viewed
2    in combination with alleged compensatory, punitive, and emotional distress
3    damages, the jurisdictional minimum is clearly satisfied."   209 F. Supp. 2d
4    1029,1035 (N.D. Cal. 2002).

5        61.    The benchmark for attorneys' fees in the Ninth Circuit is 25% of the
6    recovery. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)
7    ("This circuit has established 25% of the common fund as a benchmark award for
8    attorney's fees.").

9        62.    The total amount in controversy on Plaintiff's individual and PAGA
10   penalty claims is at least approximately $3,767,962.25 to $3,776,987.38, thus the
11   amount of attorneys' fees could be at least $941,990.56 to $944,246.85 (25% x total
12   amount in controversy).

13       **4.    Total Amount-In-Controversy for Diversity Jurisdiction**

14       63.    Plaintiff's potential damages on his individual and PAGA claims, both
15   of which can form the amount-in-controversy, are at least **$3,767,962.25 to**
16   **$3,776,987.38**, far exceeding the $75,000 threshold set forth at 28 U.S.C. §
17   1332(a), even *without* including the claim for attorneys' fees.   The attorneys' fees
18   bring the amount-in-controversy to **$4,709,952.81 to $4,721,234.23**, as reflected
19   below:

| | | | |
|---|---|---|---|
| Meal & Rest Break Premium Pay: | $14,329.80 (3 yrs) to $21,549.90 (4 yrs) | | |
| "Clawed Back" Wages: | $3,582.45 (3 yrs) to $5,387.48 (4 yrs) | | |
| Inaccurate Wage Statement Penalties: | $27,800 | | |
| PAGA Penalties: | $3,722,250 | | |
| *Subtotal*: | **$3,767,962.25** | **to** | **$3,776,987.38** |
| Attorneys' Fees: | $941,990.56 | to | $944,246.85 |
| **TOTAL**: | **$4,709,952.81** | **to** | **$4,721,234.23** |

64.     Moreover, these calculations do not even include Plaintiff's claims for failure to pay overtime, failure to pay minimum wages, or waiting time penalties, and also do not assume a 100% violation rate (although that assumption would be supported by Plaintiffs' pleadings and testimony)—which would further increase the amount-in-controversy.  Therefore, it is obvious that Alta-Dena has met its burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000.

**B.     $5,000,000 Amount-In-Controversy For CAFA Jurisdiction**

65.     Because jurisdiction exists based on diversity, there is no need to establish jurisdiction under CAFA.  Nonetheless, Alta-Dena demonstrates that the amount-in-controversy requirement of CAFA also is met here.

66.     The damages outlined above, standing alone, come close to satisfying the $5,000,000 amount-in-controversy threshold under CAFA.  When combined with other alleged damages, the $5 million threshold is easily satisfied.

67.     *First*, Plaintiff claims that he never was provided a duty free meal period and was "often" deprived of meal and rest periods without being paid one hour of premium wages, and that his claims are typical for those of all putative class members.  (Compl. ¶14)  The statute of limitations on such claims is three

1    years. *Murphy*, 40 Cal. 4th at 1110-11.  However, as noted above, Plaintiff seeks to

2    extend the limitations period to four years by asserting UCL claims.

3          68.    Once again, assuming that Plaintiff's claims were tolled by the

4    February 2012 filing date in *de la Cueva* and given that Plaintiff alleges no claims

5    against Alta-Dena after December 2010, the statutory period for these claims would

6    run from February 2009 to December 2010 (95 work weeks) using a 3-year statute

7    of limitations, or from February 2008 to December 2010 (145 work weeks) using a

8    4-year statute of limitations.

9          69.    Between February 1, 2009 and December 31, 2010, Alta-Dena

10   continuously employed approximately 105 drivers.  (Ball Decl. ¶ 12)  Their average

11   hourly rate of pay was approximately $24.48 per hour.  (*Id.*)

12         70.    Between February 1, 2008 and December 31, 2010, Alta-Dena

13   continuously employed approximately 105 drivers.  (*Id.* ¶ 11.)  Their average

14   hourly rate of pay was approximately $24.48 per hour.  (*Id.*)

15         71.    Plaintiff alleges that putative class members were *never* allowed duty-

16   free meal periods as a result of Alta-Dena's policies.  (Compl. ¶ 14: "Thus,

17   Defendant did not allow Plaintiff or any putative class member duty free meal

18   period(s) as required by the California Labor Code and the applicable Industrial

19   Welfare Commission Wage Orders.")  Plaintiff alleges that he and other drivers

20   worked ten or more hours a day, thus entitling them to a second-duty free meal

21   period.  (*Id.*)  Plaintiff also alleges that he and other drivers "often" were not

22   provided earned first or second rest breaks.  (*Id.*)  Again, his allegations and

23   testimony support using a 100 percent violation rate.

24         72.    Calculating class-wide premium pay based on just 3 meal period and 3

25   rest break violations per driver per week—and recognizing that the amount in

26   controversy could be at least two or three times as much based on Plaintiff's

27

28

1    allegations—this claim alone adds at least another $1,465,128 to $2,236,248 to the

2    amount-in-controversy for CAFA purposes:[7]

> Premium Pay applying 3-year limitation period of Section 227.6
>
> $24.48 x 6 violations/week x 95 work weeks x 105 employees = $1,465,128
>
> Premium Pay applying 4-year limitation period of UCL
>
> $24.48 x 6 violations/week x 145 work weeks x 105 employees = $2,236,248

7          73.    *Second*, Plaintiff claims that as a result of the alleged missed meal

8    periods, putative class members did not receive accurate itemized wage statements.

9    In addition to the "heavy penalties" under PAGA, Plaintiff seeks to recover

10   penalties pursuant to Labor Code § 226(e) on behalf of all putative class members.

11   Cal. Labor Code § 226(e) ("[A]n employee suffering injury as a result of a knowing

12   and intentional failure by an employer to comply with subdivision (a) is entitled to

13   recover the greater of all actual damages or fifty dollars ($50) for the initial pay

14   period in which a violation occurs and one hundred dollars ($100) per employee for

15   each violation in a subsequent pay period, not exceeding an aggregate penalty of

16   four thousand dollars ($4,000) . . . .").

17         74.    The statute of limitations for these penalty claims is one year.  Once

18   again, even assuming Plaintiff may seek the benefit of the February 1, 2012 filing

19   date in the *de la Cueva* action, it is Defendant's position that these penalty claims

20   are time-barred.  Since potential defenses cannot be considered at this procedural

21   posture, these penalty claims must be included for purposes of assessing the amount

22   in controversy.

23         75.    Calculating these alleged penalties based on 105 purported class

24   members receiving inaccurate wage statements for each pay period during the one-

25   year limitations period because they missed at least one meal period per pay period,

26   _____

27   [7] *See Helm v. Alderwoods Grp.*, No. C 08-01184 SI, 2008 WL 2002511, at *4 n.3
     (N.D. Cal. May 7, 2008) (accepting calculations for CAFA amount-in-controversy
28   based on average hourly wages of non-exempt employees).

this alleged claim could add at least another $267,750 to the amount-in-controversy:

Section 226(e) Penalties

($50 for the first pay period + $100 each for the subsequent 25 pay periods) x 105 employees = $267,750

76. Therefore, the amount in controversy increases by at least an additional $1,732,878 to $2,503,998 when the claims of class members are aggregated for purposes of establishing CAFA jurisdiction.

77. Combining Plaintiffs' individual claims, PAGA claims, and class claims, along with attorney's fees, demonstrates that the amount-in-controversy is at least **$6,876,050.31 to $7,851,231.72**, thus exceeding $5,000,000 for CAFA purposes:

| | |
|---|---|
| Perez Meal & Rest Break Premium Pay: | $14,329.80 (3 yrs) to 21,549.90 (4 yrs) |
| Perez "Clawed Back" Wages: | $3,582.45 (3 yrs) to $5,387.48 (4 yrs) |
| Perez Inaccurate Wage Statement Penalties: | $27,800 |
| PAGA Penalties: | $3,722,250 |
| Class Meal & Rest Break Premium Pay: | $1,465,128 (3 yrs) to $2,236,248 (4 yrs) |
| Class Section 226(e) Penalty Claims: | $267,750 |
| *Subtotal*: | $5,500,840.25    to    $6,280,985.38 |
| Attorneys' Fees: | $1,375,210.06    to    $1,570,246.35 |
| **TOTAL:** | **$6,876,050.31    to    $7,851,231.73** |

## IV. SUMMARY OF JURISDICTIONAL FACTS

78. This Court has jurisdiction both under the diversity jurisdiction statute as well as under CAFA. 28 U.S.C. §§ 1332(a), 1332(d)(2).

79. The Court has diversity jurisdiction because the amount-in-controversy on Plaintiff's individual claims (or Plaintiff's individual and PAGA claims) exceeds $75,000 and the parties are completely diverse.

80.   The Court has CAFA jurisdiction because the aggregate amount-in-controversy for all claims exceeds $5,000,000 and the parties are minimally diverse.

WHEREFORE, Defendant Alta-Dena Certified Dairy, LLC respectfully requests that the above-titled action be removed from the Superior Court of the State of California for the County of Los Angeles to this District Court.

Dated: June 17, 2013

MARC M. SELTZER
KATHRYN P. HOEK
STEVEN G. SKLAVER
AMANDA BONN
SUSMAN GODFREY L.L.P.

By *Kathryn P. Hoek*

Kathryn P. Hoek
*Attorneys for Defendant*
*Alta-Dena Certified Dairy, LLC*

# PROOF OF SERVICE

I, the undersigned, declare:

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1901 Avenue of the Stars, Suite 950, Los Angeles, California 90067-6029.

On June 17, 2013, I served the foregoing document(s) described as follows:

**ALTA-DENA CERTIFIED DAIRY, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332(a), 1332(d)(2), 1441(a) (DIVERSITY AND CAFA)**

on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as stated on the attached service list, as follows:

<u>XX</u> BY MAIL:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

\_\_\_\_\_ BY PERSONAL SERVICE: I caused to be delivered such envelope by hand to the offices of the addressee.

\_\_\_\_\_ BY FEDERAL EXPRESS OR OVERNIGHT COURIER

\_\_\_\_\_ BY TELECOPIER

<u>XX</u> BY ELECTRONIC MAIL: I caused said documents to be prepared in portable document format (PDF) for e-mailing and served by electronic mail as indicated on the attached service list.

Executed on June 17, 2013, at Los Angeles, California

<u>XX</u> (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

M.F. Williams
(Type or Print Name)

(Signature)

1

**SERVICE LIST**

2

***Attorneys for Plaintiff Juan Perez***

3

4  Timothy B. McCaffrey, Jr.
Natasha Chesler
5  THE LAW OFFICES OF TIMOTHY B. MCCAFFREY, JR.
A Professional Corporation
6  11377 West Olympic Boulevard, Suite 500
Los Angeles, California 90064-1683
7  Telephone: (310)882-6407
Facsimile: (310)882-6359
8  Email: tmccaffrey@tbmlaw.net
Email: nchesler@tbmlaw.net
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Christina A. Snyder and the assigned discovery Magistrate Judge is Jacqueline Chooljian.

The case number on all documents filed with the Court should read as follows:

## CV13- 4335 CAS (JCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

JUAN PEREZ, on behalf of himself and those similarly situated.

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

ALTA-DENA CERTIFIED DAIRY, LLC, a Delaware Limited Liability Company; and DOES 1 through 10, inclusive

**(b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)**

Timothy B. McCaffrey, Jr., Natasha Chesler, The Law Offices Of Timothy B. Mccaffrey, Jr., 11377 West Olympic Boulevard, Suite 500
Los Angeles, California 90064-1683
Telephone: (310)382-6407, Facsimile: (310)882-6359

**(b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)**

MARC M. SELTZER (54534), KATHRYN P. HOEK (219247), STEVEN G. SKLAVER (237612)
SUSMAN GODFREY L.L.P., 1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067, Telephone: (310) 789-3100
Fax: (310) 789-3150.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding
☒ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Labor Code Violation

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **PERSONAL PROPERTY** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | ☐ 370 Other Fraud | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 371 Truth in Lending | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 380 Other Personal Property Damage | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | ☐ 440 Other Civil Rights | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 441 Voting | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accomodations | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 950 Constitutionality of State Statutes | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 740 Railway Labor Act | |
| | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 448 Education | ☒ 790 Other Labor Litigation | |
| | | | | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY: Case Number:** CV13-04335

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

CV-71 (02/13)

CIVIL COVER SHEET

Page 1 of 2

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES**: Has this action been previously filed in this court and dismissed, remanded or closed? ☒ NO ☐ YES

If yes, list case number(s):

**VIII(b). RELATED CASES**: Have any cases been previously filed in this court that are related to the present case? ☐ NO ☒ YES

If yes, list case number(s): (1) Ikeda, No. CV 12-03034 R (FFMx); (2) de la Cueva, No. CV 12-01804 GHK (CWx); (3) Parker, No. CV 13-02621 BRO (VBKx)

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)
☒ A. Arise from the same or closely related transactions, happenings, or events; or

☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☒ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE**: (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Texas, Wisconsin |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

***Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
**Note**: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _Kathryn P. Horn_     DATE: _June 17, 2013_

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |